IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAN L. CLARK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-311-E |
| | § | |
| FCA US, LLC, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 28). The Court has considered the motion, response, reply, applicable law, and the record. The Court finds that the motion should be, and therefore is, GRANTED.

### I.   Background Facts

Plaintiff Dan L. Clark is suing his former employer Fiat Chrysler Automobiles ("FCA") for employment discrimination and retaliation. Plaintiff began his employment with the company on February 17, 1997, as a supervisor in the Parts Distribution Center in Dallas, TX. After Plaintiff held multiple management positions in the company, FCA promoted him to Operations Manager. Although Plaintiff was successful in that role for many years, he began to have performance issues in 2009. As a result, his supervisor at the time placed him on a Performance Improvement Plan ("PIP"). Plaintiff managed to improve his performance for some time but began receiving low performance reviews in 2015 and 2016. His new supervisor Frank Drabek placed him on another PIP in May of 2017.

While Plaintiff was on the 2017 PIP, he met with Mr. Drabek at the 30 days, 60 days, and 90 days intervals; these meetings did not help the situation. Mr. Drabek determined that Plaintiff's performance had not improved, and so, Plaintiff did not successfully complete the 2017 PIP. Ultimately, Mr. Drabek made the decision to terminate Plaintiff's employment. On September 13, 2017, Mr. Drabek contacted Human Resources seeking guidance on preparing the final review notes for Plaintiff's PIP.  On October 4, 2017, Mr. Drabek received permission to terminate Plaintiff's employment.

During the week of October 2, 2017, an hourly employee named Carlos Balladares requested to be placed on the schedule for Saturday work. On October 7, 2017, Mr. Balladares discovered that he was not on the schedule and that other employees with less seniority were on the schedule. Mr. Balladares believed this schedule was a violation of the collective bargaining agreement—he complained to his supervisor, Nelson Rodriguez, about the issue. Mr. Balladares also brought the issue to his union representative's attention who in turn advised Mr. Balladares to leave early and go home.

On October 30, 2017, Mr. Balladares received a three-day disciplinary layoff for a violation of the National Attendance Procedure, negotiated as part of the collective bargaining agreement. Later that day, Plaintiff approached Mr. Rodriguez and asked him to change Mr. Balladares's absence coding from "unexcused FMLA" to "home early," but Mr. Rodriguez refused. Plaintiff then changed the coding on his own from "unexcused FMLA" to "home early."  A few days later, on November 2, 2017, FCA terminated Plaintiff's employment and changed the coding back.

Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWC")

on May 1, 2018, alleging retaliation. On September 6, 2018, Plaintiff amended his charge to include claims of age and disability discrimination. On February 7, 2020, Plaintiff filed suit in this Court alleging FMLA Retaliation, Disability Discrimination under Chapter 21 of the Texas Labor Code, and Retaliation under Chapter 21 of the Texas Labor Code. This case proceeded through discovery and on April 30, 2021, FCA filed for summary judgment. Plaintiff timely responded. The Court stayed the case until it was prepared to rule on the motion.

Plaintiff's summary of the case is simple:

> Mr. Clark asserts that he was wrongfully terminated by the Defendant when he participated in a protected activity by vindicating the FMLA rights of another employee of which he was a in (sic) supervisor capacity over. The Defendant intentionally engaged in unlawful employment practices against the Plaintiff based on his participation in the FMLA process in violation of Section 29 U.S.C. 2601 et seq. The Defendant discriminated and retaliated against the Plaintiff in connection with his managerial decision to correct the erroneous penalty coded leave ("unexcused FMLA") to the appropriate non-penalty coding ("excused home early") . . . . The reality is Mr. Clark was wrongfully terminated by the Defendant for attempting to correct an unlawful act committed against one of his subordinates.

(Doc. 34 at 5). FCA's summary of the case is simple as well:

> Clark's discharge was based on legitimate, non-discriminatory, non-retaliatory business reasons entirely unrelated to any alleged disability of Mr. Balladeres, Clark, or request for FMLA leave. Moreover, Clark has no evidence of FMLA retaliation or disability discrimination or retaliation that could support a finding that FCA US's actions were a pretext for unlawful discrimination.

(Doc. 29 at 8). After applying the law and the facts, the Court determines that it must grant summary judgment in favor of FCA.

## II. Legal Standard

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The movant must inform the court of the basis of its motion and identify the portions of the record that reveal there are no genuine material fact issues. *Id.* The movant also can satisfy its summary judgment burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the movant makes the required showing, the nonmovant must direct the court's attention to evidence in the record sufficient to establish there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the nonmovant must show the evidence is sufficient to support a resolution of the factual issue in the nonmovant's favor. *Anderson*, 477 U.S. at 249. If the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

The court must view all the evidence in a light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Anderson*, 477 U.S. at 254–55. However,

unsubstantiated assertions and unsupported speculation are not competent summary judgment evidence. *See Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

### III. Analysis

Plaintiff's complaint alleges three causes of action: 1) FMLA Retaliation; 2) Disability Discrimination under Ch. 21 of the Texas Labor Code; and 3) Retaliation under Ch. 21 of the Texas Labor Code. (Doc. 1). FCA proved its entitlement to summary judgment by highlighting the absence of evidence to support Plaintiff's case and by highlighting the existence of evidence showing FCA terminated Plaintiff's employment for legitimate, non-discriminatory reasons. Specifically, FCA made multiple references to the record and citations to law that either binds this Court or that this Court finds persuasive. FCA's success means the summary judgment burden shifts to Plaintiff.

Plaintiff on the other hand failed to carry his burden of directing "the court's attention to evidence in the record sufficient to establish [] a genuine issue of material fact for trial." *Celotex*, 477 U.S. at 324; *see also Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations omitted) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Much of Plaintiff's response is copied and pasted from FCA's summary judgment motion. *Compare* (Doc. 29) (FCA's "Factual Background") *with* (Doc. 34) (Plaintiff's "Factual Background"). As the Court will explain in more detail below, Plaintiff's decision to adopt FCA's presentation of the facts, word for word in many sections, makes it difficult to "support a resolution of the factual issue[s] in the [Plaintiff's] favor." *Anderson*, 477 U.S. at 249.

Plaintiff's response also contains explanations of the Title VII retaliation framework and Title VII procedural requirements and exceptions, but no explanation regarding whether Plaintiff wishes to bring Title VII claims rather than Texas's equivalents. (Doc. 34 at 12–14, 17–18). Regardless, the Court will analyze Plaintiff's state claims using federal case law. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (citations omitted) ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

      **a. The Court grants summary judgment in favor of FCA on Plaintiff's FMLA Retaliation claim.**

"The FMLA grants 'an eligible employee' up to twelve weeks of annual unpaid leave for 'a serious health condition' that prevents him from performing the functions of his job." *Tatum v. Southern Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019) (quoting 29 U.S.C. § 2612(a)(1)(D)). An employer may not interfere with the exercise of any right provided under the Act, nor may it "discharge . . . any individual for opposing any practice made unlawful by" the Act. *See id.* (citing 29 U.S.C. § 2615(a)). "The FMLA prohibits retaliation against those who exercise their FMLA rights." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021) (citing *Mauder v. Metro. Transit Auth. of Harris County*, 446 F.3d 574, 580 (5th Cir. 2006)). "A *prima facie* showing of FMLA retaliation requires that Plaintiff shows: (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Id.* (citations omitted). The third element requires proof of a causal link. *Id.* (citing *Acker v. GM, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017)). When considering the causal link, the Court "shall consider 'temporal proximity' between the FMLA leave, and the

termination." *Mauder*, 446 F.3d at 583. If the employee makes a *prima facie* case of FMLA retaliation, the burden shifts to the employer to present legitimate, non-discriminatory reasons for the adverse action. *Campos*, 10 F.4th at 527 (citation omitted).

    i. FCA showed there is no genuine issue of material fact regarding Plaintiff's FMLA claim and that there is an absence of evidence to support Plaintiff's case.

FCA argues summary judgment on the FMLA retaliation is appropriate for three reasons: 1) because Mr. Balladares "did not request FMLA leave, there were no FMLA rights to vindicate"; 2) Plaintiff "cannot establish a causal connection between his alleged protected activity and his discharge"; and 3) FCA terminated Plaintiff's employment for a "legitimate, non-retaliatory reason." (Doc. 29 at 17–19). The Court agrees with FCA.

    1) No FMLA rights are implicated in this case.

Plaintiff's complaint demonstrates that Plaintiff's issue is with the FCA's decision to not give Mr. Balladeres the overtime shift Mr. Balladeres requested. *See* (Doc. 34 at 15). Plaintiff concedes that "Mr. Balladares was not seeking FMLA rights, . . . Mr. Balladeres simply wanted the opportunity to work overtime." Plaintiff further states "that due to [Mr. Balladares's] seniority, he was entitled to work overtime, the option was denied to him." *Id.* When the FCA managers failed to give Mr. Balladares the shift he wanted, he decided to leave work. FCA manager Mr. Rodriguez suspended Mr. Balladares for three days as a result. *See id.* Finally, Plaintiff notes "instead of marking Mr. Balladares as 'unexcused absence,' Mr. Rodriguez knowing Mr. Balladares had not specifically requested 'FMLA leave' coded his absence as 'unexcused FMLA' to trigger a mandatory three (3) day leave. This was wrong. It is wrong." *Id.*

*Campos* makes clear that FMLA "prohibits retaliation against those who exercise their FMLA rights." 10 F.4th at 527. Mr. Balladares was not exercising FMLA rights; FCA's coding of an employee's absence is not facially unlawful under FMLA; and Plaintiff does not claim that this coding issue will negatively impact anyone's FMLA rights. Thus, the Court finds that no FMLA rights are implicated. Therefore, Plaintiff's decision to change Mr. Balladares's absence coding cannot be described as "opposing any practice made unlawful by [FMLA]." 29 U.S.C. § 2615 (a)(2). The FMLA Retaliation *prima facie* analysis does not apply to this situation.

> 2) Plaintiff cannot establish a causal connection between his decision to change the absence code and his discharge.

Assuming for the sake of argument that changing Mr. Balladares's absence code could be considered protected under the FMLA, Plaintiff's claim fails step three of the *prima facie* analysis.[1] As a reminder, step three of the *prima facie* analysis requires Plaintiff to show he was "treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Campos*, 10 F.4th at 527 (citation omitted). No one requested FMLA leave in this case—thus, the first part of step three is out. Moreover, FCA offers evidence that they already began the process of terminating Plaintiff one month before the incident involving Mr. Balladares. (Doc. 29 at 18). FCA argues that because it made the decision to terminate Plaintiff before the coding dispute, Plaintiff cannot prove causation. *Id.* at 18 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) ("proceeding along lines previously contemplated, though not yet definitively

---

[1] Step two requires Plaintiff to have suffered an adverse employment action. It is undisputed that FCA fired Plaintiff.

determined, is no evidence whatever of causality.")). The Court agrees with FCA here, the causation element is fatally undermined.

### 3) FCA terminated Plaintiff for legitimate, non-discriminatory reasons.

FCA also provides evidence that it had legitimate, non-discriminatory reasons for terminating Plaintiff. FCA notes it has "counseled and written up [Plaintiff] numerous times for performance issues" in the lead up to his termination. *Id.* at 19 (including multiple references to the Performance Improvement Plans and testimony from Plaintiff's supervisor confirming his failures to improve his performance). The Court finds that evidence proves they terminated Plaintiff for legitimate, non-discriminatory reasons. Accordingly, FCA proved it is entitled to summary judgment on Plaintiff's FMLA Retaliation claim and the burden shifts to Plaintiff.

### ii. Plaintiff failed to show there is a genuine issue of material fact regarding his FMLA Retaliation claim.

Plaintiff fails to explain or cite case law demonstrating how FCA's coding decision regarding Mr. Balladares's unexcused absence affects either Plaintiff's or Mr. Balladeres's FMLA rights. Instead of showing the Court how FCA's decision was in any way discriminatory, Plaintiff simply claims "this was wrong—it is wrong." (Doc. 34 at 15). Without showing how the decision was discriminatory, Plaintiff's mere belief that the decision "is wrong" is the kind of conclusory statement that fails to defeat summary judgment. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citation omitted) ("Conclusory statements are not competent evidence to defeat summary judgment.").

Plaintiff argues the "timing of the events proves that Mr. Clark was terminated in retaliation to his vindication of Mr. Balladares." (Doc. 34 at 16). Regarding the first element of an FMLA

retaliation claim, the timing of Plaintiff's termination does not prove that his actions were protected under FMLA. Regarding the third element, the causation element, Plaintiff acknowledges that he was notified formally of his performance issues before the coding dispute; and Plaintiff acknowledges that the decision to terminate his employment was made before he attempted to change the coding on Mr. Balladeres's absence. *Id.* at 11. His timing argument fails in light of the facts he concedes.[2]

The Court need not regulate the speed at which employers execute their decisions to terminate employees; a wide range of cases dictates this Court must not involve itself in these kinds of management decisions when no employment rights are violated. *See, e.g.*, *Bryant v. Compass Group USA, Inc.* 413 F.3d 471, 478 (5th Cir. 2005) (citations omitted) ("Management does not have to make proper decisions, only non-discriminatory ones. Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'"). Because Plaintiff failed to show there is a genuine issue of material fact, his FMLA Retaliation claim fails. Summary judgment in favor of FCA on Plaintiff's FMLA Retaliation claim must be granted.

### b. The Court grants summary judgment in favor of FCA on Plaintiff's Ch. 21 Disability Discrimination claim.

---

[2] The Court writes this footnote seeking clarification whether timing alone can establish the third element. *See Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021) ("she establishes the third element of her prima facie case based on timing alone: She requested medical leave on February 20 and 23, and a disciplinary-review-board request was brought against her on February 22."); but see *Strong v. Univ. Health Care. Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers."). The *Watkins* court does go on to say "[w]hen combined with the discredited reason of 'sleeping on the job,' the near-immediate temporal proximity of the discharge to the protected activity leaves us with no room to doubt" plaintiff carried her burden. 997 F.3d at 285–86. Can this Court now consider "temporal proximity so close" alone as sufficient evidence of pretext, or should this Court still look for other combining factors? *Id.* at 286 n.6. The answer to this question has no impact on the Court's analysis in this case, but clarification on this question in a future case may prove helpful.

Texas law prohibits employers from discriminating against their employees based on disability. Tex. Lab. Code § 21.051(1). Because the Texas statute parallels the ADA, the Court treats such claims similarly. *Campos*, 10 F.4th at 520 (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 & n.13 (5th Cir. 2004)). A plaintiff can prove discrimination through direct or circumstantial evidence. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). When circumstantial evidence is the basis for the claim, the *McDonnell Douglas* burden-shifting framework applies. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). First, the employee bears the burden to prove the *prima facie* elements: "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (alteration in original). If the employee demonstrates the *prima facie* elements, the burden shifts to the employer to present legitimate, non-discriminatory reasons for the adverse action. *LHC Grp.*, 773 F.3d at 694. If the employer submits such reasons, the burden shifts back to the employee to show that those reasons are pretextual. *Id.*

      i. FCA showed there is no genuine issue of material fact regarding Plaintiff's Ch. 21 Disability Discrimination claim and that there is an absence of evidence to support Plaintiff's case.

FCA argues Plaintiff's Ch. 21 Disability Discrimination claim should be dismissed because 1) Plaintiff failed to exhaust administrative remedies and 2) Plaintiff's disability claim does not have any basis in fact or law. The Court agrees with the FCA. Plaintiff failed to exhaust his administrative remedies and, even if he did, he failed to establish a *prima facie* case of Ch. 21 disability discrimination.

1) Plaintiff failed to exhaust administrative remedies.

"Texas Labor Code 21.202's 180-day filing requirement is mandatory but not jurisdictional." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 554 (5th Cir. 2020). When a Plaintiff fails to timely exhaust administrative remedies the Court must dismiss these claims with prejudice. *See id.* at 552, 554–55. FCA discharged Plaintiff on November 2, 2017. Thus, the deadline to timely file a Ch. 21 complaint was May 1, 2018. Here, Plaintiff filed his claim with the TWC and EEOC on May 1, 2018, the day of the deadline for a timely filing.

### A. Plaintiff's initial discrimination charge does not allege disability discrimination.

Reading the Plaintiff's initial discrimination charge as broadly as required, the Court still finds that Plaintiff's Ch. 21 Disability Discrimination claim could not be expected to grow out of that filing. *See Pachecho v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). As an initial matter, Plaintiff only checked the box for retaliation, leaving the box for disability blank. (Doc. 35-1 at 140). More importantly, Plaintiff does not mention his disability nor Mr. Balladares's alleged disability at all in the fact section.[3] Plaintiff spends a few sentences discussing Mr. Balladares's need for FMLA leave in 2002 – 2007, but several paragraphs discussing his grievance with the way FCA handled overtime decisions in violation of the collective bargaining agreement. *Id.* at 140–43. Lastly, he does not point to any additional documents that the Court can use to determine if the EEOC or his employer was properly notified of his disability claim. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 404 (2008) ("a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf, the question is whether the filing here meets this test."). Even liberally construing the filing does not fix these defects—nor

---

[3] There is no mention anywhere in the record whether Mr. Balladares has a disability of any kind.

can a disability claim reasonably be expected to grow out of this filing. *See, e.g.*, *Warden v. James Hardie Bldg. Prods.*, No. 3:20-CV-3431-N, 2022 U.S. Dist. LEXIS 1739, 2022 WL 48389, at *3 (N.D. Tex. Jan. 5, 2022); *Huff v. DRE Mgmt.*, No. 3:12-CV-0414-B, 2012 U.S. Dist. LEXIS 105859, 2012 WL 3072389, at *5 (N.D. Tex. July 30, 2012) (finding a disability discrimination claim did not grow out of plaintiff's EEOC filing yet a disability retaliation claim did). Plaintiff also filed an untimely amended charge of discrimination on September 6, 2018, 308 days after his termination. His amended charge now complains of disability discrimination.

> B. Plaintiff's amended charge does not satisfy the requirements to be considered timely filed.

"[A]mendments that raise a new legal theory do not 'relate back' to an original charge of discrimination" unless "the facts supporting both the amendment and the original charge are essentially the same." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878–79 (5th Cir. 2003). "The issue is not whether the employee *adds* any facts when he amends his charge of discrimination. Instead, the question is whether the employee *already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination." *Id.* at 879 (emphasis in original). As the Court noted above, Plaintiff failed to include sufficient facts regarding disability discrimination in his first charge with the EEOC.[4] And though his untimely amended charge checked the disability box, it does not allege any facts relating to his employment or termination at all, let alone facts pertaining to his disability. (Doc. 30 at 105–06). Thus, Plaintiff's amended charge cannot relate back because the facts

---

[4] Plaintiff's initial EEOC charge of discrimination did reference retaliation based on disability but "discrimination and retaliation claims are distinct, and the allegation of one in an EEOC charge does not exhaust a plaintiff's remedies as to the other." *Lavigne v. Cajun Deep Founds., L.L.C.*, 654 Fed. App'x. 640, 648 (5th Cir. 2016) (unpublished) (quoting *Bouvier v. Northrup Grumman Ship Sys. Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) (per curiam) (unpublished)).

supporting both allegations are not essentially the same nor do they concern any alleged disability. *See Banda v. Owens Corp.*, No. 3:17-CV-1787-B, 2018 U.S. Dist. LEXIS 214844, 2018 WL 6726542, at *12 (N.D. Tex. Dec. 21, 2018) (citing *Manning*, 332 F.3d at 879). Plaintiff's Ch. 21 Disability claim must be dismissed for failure to exhaust administrative remedies. Even if he had properly exhausted those remedies, there is insufficient evidence to prove a *prima facie* case of Ch. 21 disability discrimination.

        2) There is insufficient evidence to show that FCA terminated Plaintiff due to Plaintiff's disability or Mr. Balladeres's alleged disability.

According to Plaintiff, "he is only claiming disability discrimination based on Balladares' alleged disability." (Doc. 34 at 9). Assuming Plaintiff can bring this discrimination claim on Mr. Balladares's behalf, there is no evidence for Plaintiff to make a *prima facie* case. As FCA notes, there is no evidence in the record that Mr. Balladares suffered from any disability. (Doc. 29 at 23). Plaintiff therefore fails to demonstrate the first element, that Mr. Balladares suffered from a disability. Assuming that he does, there is no evidence in the record that Mr. Balladares's alleged disability was the reason for his three-day suspension. Accordingly, FCA proved it is entitled to summary judgment on Plaintiff's Ch. 21 Disability Discrimination claim and the burden shifts to the Plaintiff.

        ii. Plaintiff failed to show there is a genuine issue of material fact regarding his Ch. 21 Disability Discrimination claim.

Regarding exhaustion, Plaintiff states only that he filed an EEOC complaint on May 1, 2018, and amended it on August 7, 2018. (Doc. 34 at 17). The Court agrees that Plaintiff filed a discrimination charge on May 1, 2018, but as noted above, that filing did not cover disability discrimination. Although Plaintiff argues he amended the filing on August 7, 2018, the charge

itself shows he amended it on September 6, 2018. He does not explain in any detail how this filing was sufficient to exhaust his administrative remedies regarding the disability discrimination claim nor how it could relate back to the original filing. Plaintiff alludes generally to the equitable exceptions. (Doc. 34 at 17) ("To achieve the remedial purpose of Title VII, courts often liberally construe the 90-day filing requirement and allow technically untimely filings to proceed based on doctrines of constructive filing or tolling."). Even liberally construing the amended filing does not allow the Court to interpret it as properly relating back to the original filing. And although Plaintiff alludes to those equitable doctrines, he does not provide any facts suggesting which one he wishes to invoke, nor how or why any of them should apply. *See generally id.* Plaintiff bears the burden of proving entitlement to these equitable exceptions. *See Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). But Plaintiff does not provide any facts regarding why any of these exceptions apply; and the Court finds none in the record. Thus, the Court declines to apply them. *See Tipping v. Garland Cadillac*, No. 3:21-CV-1403-G-BH, 2022 U.S. Dist. LEXIS 38536, at *11 (N.D. Tex. Feb. 9, 2022) ("Plaintiff has not alleged any of the circumstances recognized by the Fifth Circuit that might warrant equitable tolling, or any basis for equitable tolling of her 300-day limitations period for filing her Charge. Because Plaintiff did not timely file her Charge and has not alleged any facts to support a plausible claim for equitable tolling, her claims are subject to [being] dismissed as time-barred on this basis."), *rec' adopted*.

Regarding the *prima facie* elements of a Ch. 21 discrimination claim, Plaintiff's response to summary judgment does not mention his Ch. 21 Disability Discrimination claim at all. (Doc. 34). He failed to argue in favor of the merits of his disability claim, and therefore, he failed to carry his summary judgment burden. *See Dandridge v. Principal Mgmt. Group of N. Tex.*, No. 3:19-CV-2118-B, 2021 U.S. Dist. LEXIS 81953, 2021 WL 1688438, at *7 (N.D. Tex. Apr. 29, 2021) (citing

*Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 U.S. Dist. LEXIS 110317, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) (citations omitted) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.")). Because Plaintiff failed to show there is a genuine issue of material fact, his Ch. 21 Disability Discrimination claim fails. Summary judgment in favor of FCA on Plaintiff's Ch. 21 Disability Discrimination claim must be granted.

### c. The Court grants summary judgment in favor of FCA on Plaintiff's Ch. 21 Retaliation claim.

A claim of retaliation under Ch. 21 requires the plaintiff to prove: (1) "that he is engaged in a protected activity;" (2) "that an adverse employment action occurred;" and (3) "that a causal link existed between the protected activity and the adverse action." *Pineda v. UPS, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). The *McDonnell Douglas* burden-shifting framework applies. *See id.* The Texas statute provides protection for an employee who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code § 21.055.

> i. FCA showed there is no genuine issue of material fact regarding Plaintiff's Ch. 21 Retaliation claim and that there is an absence of evidence to support Plaintiff's case.

FCA argues that Plaintiff's Retaliation claim should be dismissed because 1) Plaintiff did not engage in protected activity and 2) Plaintiff cannot establish a causal connection between the alleged protected activity and his termination. The Court agrees with FCA on both grounds.

1) Plaintiff did not engage in protected activity.

As FCA notes, Plaintiff testified that Mr. Balladares did not mention any disability when he asked to leave early on October 7, 2022. (Doc. 29 at 26). FCA then argues that "Plaintiff's decision to change the attendance coding from unexcused FMLA to home early does not constitute a protected activity under the TCHRA." *Id.* FCA is correct—Plaintiff's decision to oppose the FMLA coding does not constitute a violation under Ch. 21. *See Campos*, 10 F.4th at 526 ("There is no authority that taking FMLA leave is a protected activity under [Ch. 21]"). Because of Plaintiff's summary of the case—arguing that he "participated in a protected activity by vindicating the *FMLA rights* of another employee" rather than disability rights; and because of Plaintiff's answers in depositions—stating that no one mentioned disabilities to anybody in the lead up to Mr. Balladares's three-day suspension—Plaintiff cannot prove that he engaged in protected activity under Ch. 21.

> 2) Plaintiff cannot establish a causal connection between his decision to change the absence code and his discharge.

FCA argues that Plaintiff cannot establish the required causal connection because 1) it made the decision to terminate Plaintiff one month before the coding issue with Mr. Balladares and 2) because Plaintiff admits no one mentioned disabilities at all at the time of Mr. Balladares's suspension or Plaintiff's termination. The Court agrees with FCA for the same reason the Court decided Plaintiff's FMLA Retaliation claim in FCA's favor. Accordingly, FCA proved it is entitled to summary judgment on Plaintiff's Ch. 21 Retaliation claim and the burden shifts to the Plaintiff.

> ii. Plaintiff failed to show there is a genuine issue of material fact regarding his Ch. 21 Retaliation claim.

Plaintiff's Ch. 21 retaliation argument is no different than his FMLA retaliation argument. *Compare* (Doc. 34 at 14–16) (FMLA retaliation argument) *with* (Doc. 34 at 16–17) (Ch. 21 retaliation argument). It references the same factual basis with no separate analysis as to how either

Plaintiff's disability or Mr. Balladares's alleged disability factored into FCA's decision making. (Doc. 34 at 16–17). Not only is Plaintiff's Ch. 21 Retaliation claim now doomed to fail for the same reason his FMLA Retaliation claim failed, his Ch. 21 Retaliation claim fails to show any decision maker was aware of Plaintiff's disability or Mr. Balladares's alleged disability. Without that showing, Plaintiff cannot prove FCA retaliated against him or Mr. Balladares because of any alleged disability. *See Lanier v. Univ. of Tex. Southwestern Med. Ctr.*, 527 Fed. App'x 312, 319 (5th Cir. 2013) (unpublished) (affirming the dismissal of a Ch. 21 retaliation claim because "[t]here [was] no evidence in the record that any of Lanier's supervisors were aware that Lanier claimed to be disabled."). Because Plaintiff failed to show there is a genuine issue of material fact, his Ch. 21 Retaliation claim fails. Summary judgment in favor of FCA on Plaintiff's Ch. 21 Retaliation claim must be granted.

## IV.   Conclusion

For the reasons above, the Court GRANTS Defendant's Motion for Summary Judgment. (Doc. 29). All of Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

SO ORDERED: March 31, 2022.

Ada Brown
UNITED STATES DISTRICT JUDGE